**COMMONWEALTH of Kentucky,**
**Appellant**

v.

**Sheila PERRY, Appellee.**

No. 2005–SC–000521–CL.

Supreme Court of Kentucky.

April 19, 2007.

Teresa Young, Assistant Commonwealth's Attorney, Louisville, Counsel for Appellant.

Daniel T Goyette, Louisville Metro Public Defender, Frank Wm Heft Jr, Jefferson District Public Defender, Carolyn Dawn McMeans, Louisville Metro Public Def., Louisville, Counsel for Appellee.

Opinion of the Court by Justice SCHRODER.

The sole issue in this certification of the law sought by the Commonwealth is whether the offense of Theft by Failure to Make Required Disposition of Property (KRS 514.070) covers a situation in which the victim gives money to the defendant with the agreement that the defendant will purchase merchandise from a third party source and give it to the victim, and then the defendant fails to purchase the item or return the money. We hold that it does.

Norma Taylor needed a new engine for her car, so she contacted the defendant, Sheila Perry, who she had heard was a good mechanic. Taylor asked Perry to look at her car and see if she could get an engine for it. Perry examined the car and told Taylor that she could get an engine for it at a junkyard for $375 and that she would install it for an additional fee. On February 25, 2004, Taylor gave Perry $375 to get the engine. Perry never obtained the engine for Taylor, so Taylor asked Perry to return the money. When Perry failed to return the money, Taylor filed a

small claims action against Perry on March 9, 2004 and obtained a judgment for $375 plus court costs.

Perry was charged with Theft by Failure to Make Required Disposition of Property over $300 (KRS 514.070). Taylor was the only witness for the Commonwealth at trial. At the close of the Commonwealth's evidence, Perry moved for a directed verdict on grounds that there was no evidence that Perry permanently intended to deprive Taylor of her money. The court granted the directed verdict, adjudging that the relationship between Perry and Taylor was that of a debtor and creditor, not a fiduciary relationship, thus the case was controlled by *Commonwealth v. Jeter*, 590 S.W.2d 346 (Ky.App.1979). Pursuant to CR 76.37(10), this Court granted the Commonwealth's request for certification of the law on the following question: Does KRS 514.070 encompass a course of conduct in which the victim gives money to the defendant with the agreement that the defendant will purchase merchandise from a third party source and give it to the victim, and then the defendant fails to purchase the item or return the money?

KRS 514.070(1) provides:

A person is guilty of theft by failure to make required disposition of property received when:

(a) He obtains property upon agreement or subject to a known legal obligation to make specified payment or other disposition whether from such property or its proceeds or from his own property to be reserved in equivalent amount; and

(b) He intentionally deals with the property as his own and fails to make the required payment or disposition.

The Commentary to KRS 514.070 states in part: "It is not the purpose of this statute to impose a criminal sanction in the relationship of debtor and creditor. To constitute an offense there must be a breach of trust, growing out of a contract or confidential relation."

In *Jeter*, 590 S.W.2d at 346–47, the owner of a retail furniture store accepted money from various buyers for the purchase of appliances, then failed to deliver the appliances as promised. The owner was charged under KRS 514.070 and the court dismissed the charges as not being within the purview of the statute. The Court of Appeals held that KRS 514.070 was not intended to penalize sellers who fail to deliver purchased merchandise, but "was instead enacted to penalize the misapplication of property received from another." *Id.* at 348. While citing to the Commentary to KRS 514.070 and its requirement of a fiduciary duty, the court looked to the literal language of the statute as controlling. "A careful reading of the statute leads one to the conclusion that this statute was not enacted to penalize the type of fact pattern as is alleged in the Commonwealth's case against Jeter." *Id.* at 347. The court noted that the conduct would have more properly supported an indictment under KRS 514.040 (Theft by Deception) and went on to list examples of conduct that would fall within the scope of KRS 514.070—failure to turn over collected sales tax, failure of contractor to apply monies to satisfy materialmans' liens, failure to apply withheld wages to pension fund, and bank's failure to credit deposited funds to customer's account. *Id.* (quoting KATHLEEN F. BRICKEY, KENTUCKY CRIMINAL LAW § 14.08 (1974)).

The Commonwealth argues that *Jeter* is distinguishable from the instant case by the fact that Perry was not a retailer and was to purchase the engine for Taylor from a third party source. Because Perry was not a seller, but rather had specifically agreed to use the funds to purchase the engine from a third party and then misapplied the funds, the Commonwealth asserts

that KRS 514.070 is applicable to her actions.

Perry counters that although she did agree to purchase the engine for Taylor, the purchase of the engine was incidental to the underlying service agreement to install the engine. It is Perry's position that her relationship with Taylor was simply that of a debtor and creditor as in *Jeter*, and that the proper remedy is a civil one. Perry also argues that cases where conduct has been found to constitute an offense under KRS 514.070 are all cases in which the defendant had a specific legal duty relative to disposition of the funds and she had no such legal duty in this case. *See Commonwealth v. Hay*, 987 S.W.2d 792 (Ky.App.1998) (county jailer who installed vending machines in jail and personally kept all profits—Section 173 of the Kentucky Constitution); *Taylor v. Commonwealth*, 799 S.W.2d 818 (Ky.1990) (insurance agent who failed to pay collected insurance premium to principal insurer— KRS 304.9–400); and *Blanton v. Commonwealth*, 562 S.W.2d 90 (Ky.App.1978) (contractor who failed to pay for labor and materials used in construction of residence where victim had paid contractor a majority of the funds under the contract—KRS 376.070(1)).

We believe the fact pattern in the present case falls within the ambit of KRS 514.070. Perry took the $375 pursuant to an agreement to use the money specifically to buy an engine for Taylor from a junkyard, and then failed to buy the engine and kept the money. Unlike *Jeter*, where payment was directly made to the seller/retailer for purchase of the goods, Perry was acting as the agent for Taylor in the purchase of the engine from a third party— the junkyard. This was not simply a case of failure to deliver purchased goods.

The case at bar is akin to *Taylor v. Commonwealth*, 799 S.W.2d 818, where monies were given to an insurance agent specifically for the purpose of paying the individuals' insurance premiums. When the agent failed to pay the funds over to the underwriter and spent the funds, he was charged and convicted under KRS 514.070. Like the instant case, the defendant was acting as an agent of the victims for the purpose of payment of funds to a specified source.

A case we feel we must address, where the defendant was likewise prosecuted under KRS 514.070 in a three-party transaction, is *Commonwealth v. Pevely*, 759 S.W.2d 822 (Ky.App.1988). In *Pevely*, Edmonds gave the defendant cattle gates to sell pursuant to an agreement that the defendant and Edmonds would share in the profits when they were sold. Edmonds thereafter never received any money from the defendant and the gates were never returned. The jury found the defendant guilty under KRS 514.070. While not ruling KRS 514.070 inapplicable under the facts, the Court of Appeals affirmed the trial court's judgment notwithstanding verdict on grounds that there was no proof that the defendant had ever sold the gates or derived any profit from them. *Id.* at 824. We question the court's reasoning in *Pevely* because, like the present case, the failure to return the gates or pay over profits from their sale would support an inference that the defendant had converted the property to his own use. *See* ROBERT G. LAWSON & WILLIAM H. FORTUNE, KENTUCKY CRIMINAL LAW § 13–5(c)(1), at 508 n. 97 (1998). However, as to the "required payment or disposition" element, the parties in *Pevely* had an agreement that the profits would be paid only after the sale of the property, with apparently no specified buyer and no stipulated time period for the sale, whereas in the instant case the parties had an agreement to buy specified property which Per-

ry had represented was readily available from a junkyard. Certainly if Edmonds had made a demand for the gates (the case is silent as to whether any such demand was made) and the defendant refused to return them, the conduct would have supported a conviction under KRS 514.070.

As to Perry's assertion that KRS 514.070 only applies if the defendant has a known legal obligation to pay or turn over the funds, per the plain language of the statute, the property must be obtained "upon *agreement or* subject to a known legal obligation to make specified payment or other disposition." KRS 514.070(1)(a) (emphasis added). In this case, the evidence established that there was an agreement between Perry and Taylor that Perry would use the $375 to purchase the engine from a junkyard for Taylor.

We are compelled to point out that our decision is not meant to be read so as to require the existence of a third party in all cases prosecuted under KRS 514.070. In particular, we note with approval the dicta in *Hellard v. Commonwealth,* 829 S.W.2d 427, 429 (Ky.App.1992), *overruled on other grounds, Commonwealth v. Burge,* 947 S.W.2d 805 (Ky.1996), stating that the defendant, who failed to return a VCR pursuant to a rental agreement, should have been charged under KRS 514.070.

All concur.