RENDERED: MARCH 22, 2018
TO BE PUBLISHED

$\mathfrak{Supreme\ Court\ of\ Kentucky}$ FINAL



DATE 4/12/18 Kim Redman, DC

2016-SC-000448-DG

MICHAEL DONNELL MAUPIN                                    APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                          CASE NO. 2015-CA-000147
FAYETTE CIRCUIT COURT NO. 2014-CR-00037

COMMONWEALTH OF KENTUCKY                               APPELLEE

**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**REVERSING AND REINSTATING**

Section 115 of the Kentucky Constitution bars the Commonwealth from appealing a judgment of acquittal in a criminal case. This case is an appeal by the Commonwealth of Michael Donnell Maupin's judgment of acquittal on the charge of violating KRS 17.510 for failing to register a change of address with the Sex Offender Registry. The Commonwealth argues that this appeal was not barred by Section 115 because Maupin's judgment of acquittal was based on the trial court's issuance of a judgment of acquittal and not the jury's verdict.[1]

---

[1] The trial court here exercised its authority under Kentucky Rule of Criminal Procedure (RCr) 10.24, which allows the trial court, under conditions specified in this rule, to issue a judgment of acquittal, the jury's guilty verdict notwithstanding. This is sometimes referred to as a judgment notwithstanding the verdict, a judgment n.o.v. (judgment *non-obstante verdicto*), or a j.n.o.v.

A divided panel of the Court of Appeals allowed the Commonwealth's appeal to proceed, reversed the trial court's judgment of acquittal, remanded the case to the trial court with instructions to reinstate the jury's guilty verdict, and directed the trial court to impose sentence upon Maupin. On discretionary review, we reverse the Court of Appeals and reinstate the trial court's judgment.

## I. BACKGROUND.

The grand jury indicted Michael Donnell Maupin for failing to comply with the Sex Offender Registry during the period from September 18, 2013, through October 16, 2013, and for being a first-degree persistent felony offender. During the time period specified in the charge, Maupin was homeless, and the Sex Offender Registry reflected that he resided at two shelters—the Catholic Action Center during the day and the Community Inn at night. On October 16, a sheriff's deputy went to the Community Inn and was unable to find Maupin, whose name was not on the sign-in sheet used to keep track of patrons at the shelter. But according to testimony provided by the shelter's director, the sign-in process was not formally policed. Because of Maupin's absence from the shelter at the time of the deputy's visit, the deputy sought a warrant for Maupin's arrest for failing to comply with the Registry. Maupin was eventually located and arrested.

At Maupin's jury trial, the director of the Community Inn testified that homeless patrons secure a room at the Inn by lining up and signing in at a designated hour and are free to come and go as they please. The name "Michael Maupin" appeared only twice on the sign-in sheet from September 18, 2013, through October 16, 2013. Maupin claimed that he used his Islamic name,

2

Michael Aleem Waleed, and signed in as "M.A.W.", or had others sign him in to secure him a place at the shelter if he was not there when it opened, which would explain the two times "Michael Maupin" appeared on the sign-in sheet. "M.A.W." did appear on the sign-in sheet every day that "Michael Maupin" did not; however, "M.A.W." also appeared on the sign-in sheet between October 28 and 31, 2013, days when Maupin was in jail and not at the Inn. Additionally, Maupin's probation officer testified that he had never provided his Islamic alias to Probation and Parole, as required by Kentucky law.

At the close of proof at trial, Maupin moved for a directed verdict on both charges. The trial court expressed reservations regarding the strength of the Commonwealth's proof, but ultimately denied the motion. The jury convicted Maupin of both charges and recommended an enhanced sentence of ten years' imprisonment.

Maupin then moved for a new trial or judgment of acquittal. The trial court initially granted the motion for a new trial, but later modified its order to grant the motion for a judgment of acquittal, noting that a judgment of acquittal was the proper remedy in this case. The trial court reasoned that Maupin was entitled to a judgment of acquittal as a matter of justice, noting that the Commonwealth's proof was insufficient for conviction because the sign-in sheets were equivocal at best, in addition to finding that the deputy's single failed attempt to locate Maupin at the Inn on the evening of October 16, 2013, did not justify a criminal conviction and sentence.

After the trial court entered a judgment acquitting Maupin, the Commonwealth appealed. The Commonwealth asserted that the evidence was sufficient to send the case to the jury and that the trial court improperly

3

invaded the jury's role by weighing the evidence and deeming it unconvincing. The majority of a divided appellate panel agreed with the Commonwealth and reversed. Maupin then appealed to this Court, and this Court took discretionary review.

## II. ANALYSIS.

The central issue requires us to interpret a constitutional provision, Section 115 of the Kentucky Constitution, which we review de novo.[2]

Section 115 rather plainly states, "In all cases, civil and criminal, there shall be allowed as a matter of right at least one appeal to another court, *except that the Commonwealth may not appeal from a judgment of acquittal in a criminal case, other than for the purpose of securing a certification of law...*."[3] In this case, the Commonwealth is doing exactly what Section 115 proscribes—appealing a judgment of acquittal in a criminal case, other than for the purpose of securing a certification of law.

We accepted discretionary review because this case affords an opportunity to rectify an erroneous analysis of Section 115 in this Court's jurisprudence. In *Burris v. Commonwealth*, the seminal case applying Section 115, the defendant was convicted of second-degree robbery and moved for both a new trial and a judgment n.o.v.[4] The trial court denied the motion for a new trial, but granted the judgment n.o.v.[5] The Court held "that the Commonwealth was barred from securing appellate review of [a] judgment n.o.v. by [Section

---

[2] *Greene v. Commonwealth*, 349 S.W.3d 892, 898 (Ky. 2011).

[3] (emphasis added).

[4] 590 S.W.2d 878, 878 (Ky. 1979).

[5] *Id.*

4

115] of our Constitution."[6] The Court recognized that a judgment n.o.v. functions as an acquittal of a criminal defendant's charges,[7] and so the Court correctly held that the plain language of Section 115 bars the Commonwealth's appeal of that ruling.

In its discussion, the *Burris* Court cited the U.S. Supreme Court case of *Burks v. U.S.*[8] for its holding "that the Double Jeopardy Clause[9] prevents a second trial for the purpose of affording the prosecution with another opportunity to supply such evidence it failed to produce in the first trial."[10] It appears that the *Burris* Court cited *Burks* and the double-jeopardy rule to explain why the trial court, finding insufficient evidence at trial to sustain a jury's guilty verdict, could not grant the defendant's motion for a new trial— this remedy was inappropriate because jeopardy had attached,[11] and the defendant could not be re-tried. This appears to be the only reason for the discussion in *Burris* of the Double Jeopardy Clause and *Burks*, having nothing to do with Section 115 itself.

Seven years later, in *Commonwealth v. Brindley*, this Court overruled *Burris* and its analysis of Section 115 as it relates to the Commonwealth's

---

[6] *Id.* at 879.

[7] *Id*; *Commonwealth v. Bailey*, 71 S.W.3d 73, 75 (Ky. 2002) ("A JNOV (judgment notwithstanding the verdict) would constitute an acquittal of the charge that would leave nothing to be decided at a subsequent trial....").

[8] 437 U.S. 1 (1978).

[9] U.S. Const. Amend. V ("No person shall...be subject for the same offense to be twice put in jeopardy of life or limb."). The Double Jeopardy Clause of the Fifth Amendment was incorporated into state law in *Benton v. Maryland*, 395 U.S. 784, 794 (1969).

[10] *Burris*, 590 S.W.2d at 879 (citing *Burks*, 437 U.S. at 18).

[11] In a jury trial, jeopardy attaches when the jury is empaneled and sworn. *Crist v. Bretz*, 437 U.S. 28, 38 (1978).

ability to appeal a judgment n.o.v.[12] The facts of *Brindley* are almost identical to *Burris*—a defendant was convicted by a jury of a crime, the defendant filed a motion for a new trial and judgment n.o.v., and the trial court denied the motion for a new trial but granted the motion for a judgment n.o.v.[13] This Court held that "[Section 115] does not prevent an appeal by the Commonwealth when a jury has returned a verdict of guilty which has been set aside by a ruling of law to a post-verdict motion."[14]

Understanding the Court's analysis leading to its conclusion in *Brindley* sheds light on its erroneous interpretation of Section 115 and holding. The Court in *Brindley* first began its analysis by discussing the citation of *Burks* in *Burris* and the Double Jeopardy Clause.[15] After this discussion, the *Brindley* Court came to the following conclusion–a conclusion unsupported by any source of law in Kentucky–"It is our opinion that Section 115 of the Kentucky Constitution finds its origin in Section 13 of our constitution,[16] which is identical in effect as the federal counterpart in the Fifth Amendment."[17]

The *Brindley* Court appears to have read more into the *Burris* Court's use of *Burks* and the Double Jeopardy Clause in its opinion than what was there. As stated, the *Burris* Court cited *Burks* and the Double Jeopardy Clause simply as rationale for its conclusion that the remedy of a new trial could not be

---

[12] 724 S.W.2d 214, 215-16 (Ky. 1986).

[13] *Id.* at 215.

[14] *Id.* at 216.

[15] *Id.* at 215.

[16] "No person shall, for the same offense, be twice put in jeopardy of his life or limb...."

[17] *Id.* at 215 (citing *Jordan v. Commonwealth*, 703 S.W.2d 870 (Ky. 1986) for the proposition that Ky. Const. Section 13 is identical to the U.S. Constitution's Fifth Amendment).

granted because jeopardy had attached.[18] Nowhere in its opinion did the *Burris* Court state that the Commonwealth could not appeal a judgment n.o.v. *because such appeal would violate the Double Jeopardy Clause*—rather, the *Burris* Court stated, "We hold that the Commonwealth was barred from securing appellate review of the judgment n.o.v. *by the express provision* (referring to Section 115) *of our Constitution.*"[19]

Section 115 of the Kentucky Constitution is separate and distinct from Section 13 and the Fifth Amendment and in no way grounds itself in the Double Jeopardy Clause. Section 115 is clear on its face: "...the Commonwealth may not appeal from a judgment of acquittal in a criminal case...," subject to one exception not applicable in this case. Any implication of the Double Jeopardy Clause is not to be found in Section 115, and therefore any statement that Section 115 grounds itself in Section 13 is erroneous. Not only is *Brindley* the sole authority to assert that Section 115 is grounded in the Double Jeopardy Clause, but merging, as the holding in *Brindley* does, a Double Jeopardy Clause analysis with Section 115 impermissibly renders a portion of Section 115 completely superfluous.[20]

The Double Jeopardy Clause prevents a defendant from being tried for the same crime twice, and Section 115 prevents the Commonwealth from appealing a judgment of acquittal. Both provisions seek the same goal— protecting a determination of innocence. But these provisions protect a

---

[18] *Burris*, 590 S.W.2d at 879.

[19] *Id.*

[20] "[D]ifferent sections of a Constitution...are to be construed as a whole in an effort to harmonize the various provisions...." *Shamburger v. Duncan*, 253 S.W.2d 388, 391 (Ky. 1952).

defendant's innocence in different ways, working in tandem with each other: The Double Jeopardy Clause protects a defendant's innocence at the trial court level by preventing the Commonwealth from retrying a case in the hopes of acquiring a guilty verdict the second time, while Section 115 protects a defendant's innocence at the appellate court level by preventing the Commonwealth from acquiring a reinstatement of a guilty verdict after the trial court has found the jury's guilty verdict erroneous.[21] This distinction supports the assertion that the Double Jeopardy Clause plays no part in determining whether Section 115 has been violated.

Examining *Burks* and another U.S. Supreme Court case discussed in *Brindley, U.S. v. Wilson,*[22] further identifies *Brindley*'s erroneous interpretation of Section 115 and holding.

The U.S. Supreme Court in *Wilson* analyzed a federal statute, 18 U.S.C. § 3731, a rule of federal law completely different from Section 115, in fashioning its Double Jeopardy Clause analysis and holding. Unlike Section 115, Section 3731 places only one restriction on the federal government's right to appeal a defendant's criminal case: "...except that no appeal shall lie where *the double jeopardy clause of the United States Constitution prohibits further prosecution.*"[23] This is exactly why the U.S. Supreme Court in *Burks* and *Wilson* couched its

---

[21] As explained in *Brindley* and *U.S. v. Wilson,* the Double Jeopardy Clause only prevents the government from conducting another trial seeking a guilty verdict for the crime of which the defendant was acquitted of, not simply the reinstatement of the jury's guilty verdict for that crime. *Brindley,* 724 S.W.2d at 215-16; *U.S. v. Wilson,* 420 U.S. 332, 352-53 (1975). Reinstatement of a jury's guilty verdict does not require conducting another trial, so no violation of the Double Jeopardy Clause occurs in this way. *Id.*

[22] 420 U.S. 332 (1975).

[23] (emphasis added).

8

analysis of the ability of the prosecution to appeal a judgment n.o.v. in the Double Jeopardy Clause—this is the only prohibition on the prosecution's right to appeal in the entirety of federal law and is what drives such an analysis.

Under Kentucky's Constitution, Section 115 strictly prohibits any right of the prosecution to appeal a judgment of acquittal on its face, with no mention of the Double Jeopardy Clause whatsoever. Therefore the Court's reliance on *Wilson*, *Burks*, and the Double Jeopardy Clause in its *Brindley* decision is misplaced—the only restriction on the right of the government to appeal in federal statutory law is a violation of double jeopardy, but Section 115 acts as a specific enumeration of the right of the acquitted to be free from government appeals without reference to double jeopardy. The analysis of appealing a judgment of acquittal in Kentucky begins with Section 115, and may impute the Double Jeopardy Clause listed in Section 13 and the Fifth Amendment of the U.S. Constitution depending on the facts of the case, but does not solely rely on an analysis of the Double Jeopardy Clause. So the *Brindley* Court's imputation of the Double Jeopardy Clause in Section 115 and its holding are mistaken.

We do want to make clear that the *Brindley* Court's analysis of the Double Jeopardy Clause itself, in both Section 13 and the Fifth Amendment, is correct—the reinstatement of a guilty verdict by a jury, as opposed to the undertaking of a new trial, does not run afoul of the Double Jeopardy Clause.[24] This is what the U.S. Supreme Court in *Wilson* held to be the case.[25] But

---

[24] *Brindley*, 724 S.W.2d at 216.

[25] *Wilson*, 420 U.S. at 352.

9

whether the Commonwealth's actions violate the Double Jeopardy Clause and whether the Commonwealth's actions violate Section 115 of the Kentucky Constitution are two separate and distinct inquiries.

We reject *Brindley's* arguments that Section 115 derives itself from Section 13 of the Kentucky Constitution and that the Commonwealth may appeal the granting of a judgment n.o.v. Simply stated, the grant of a judgment of acquittal, including the grant of a judgment n.o.v. which is functionally equivalent to a judgment of acquittal, cannot be appealed by the Commonwealth, per the plain language of Section 115 of the Kentucky Constitution.

### III.     CONCLUSION.

We hold that Section 115 of the Kentucky Constitution bars the Commonwealth from appealing a judgment of acquittal, and so we need not reach the merits of this case. We reverse the Court of Appeals and reinstate the trial court's judgment. We also overrule any precedent stating that Section 115 derives itself from Section 13 of the Kentucky Constitution and that the Commonwealth may appeal a judgment n.o.v.

All sitting. Minton, C.J., Keller, Venters, and Wright, JJ., concur. Cunningham, J., concurs by separate opinion in which Hughes and VanMeter, JJ., join.

CUNNINGHAM, J., CONCURRING: I concur with the Majority opinion. The analysis and conclusion are unassailable.

But I cannot shake an unsettling concern. Do the Commonwealth of Kentucky and its people have any safety net in the case of a "rogue judge"?

10

One that abuses all discretion by entering a finding of acquittal despite a jury verdict of conviction that is based on solid evidence?

In the case before us, we find a sympathetic defendant, a low-grade felony, and a very close question of fact. The trial court in this case obviously acted responsibly and in good faith. But this case will stand as precedent for all future cases, even those where the crime may be shocking and the proof overwhelming. Placing in the hands of one person the ultimate authority to cast reason to the wind and "let slip the dogs of war" without an appropriate review is unacceptable to me.

It is an elementary principle of law that a writ is an original action, not an appeal. *See, e.g., Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 809 (Ky. 2004) ("The petition for this writ was filed in the Court of Appeals, which acted as a trial court because it heard the matter as an original action.") (recognizing that a petition for writ of prohibition is an original action, as opposed to a matter of right appeal); *see also Sandlin v. Miniard*, No. 2014-SC-000322-MR, 2015 WL 737116 (Ky. Feb. 19, 2015) at 1 n.2 ("Kentucky Farm Bureau's counsel incorrectly describes this action as an 'appeal.' *A writ petition is an original action* under Civil Rule 76.36; *it is not an appeal.*") (emphasis added).

It would appear that the Commonwealth could seek a writ from the Court of Appeals within the time period set for post-judgment motions.

For the Commonwealth to be granted a writ of prohibition when the Circuit Court's subject-matter jurisdiction is not challenged, "a petitioner must show that: (1) he would have no adequate remedy on appeal; and (2) he would suffer great and irreparable injury if the trial court is acting in error and the

11

writ is denied." *Sisters of Charity Health Sys., Inc. v. Raikes*, 984 S.W.2d 464, 466 (Ky. 1998) (quoting *Bender v. Eaton*, 343 S.W.2d 799, 801 (Ky. 1961)).

> However, the showing of great and irreparable injury is not absolutely necessary. "[I]n certain special cases this Court will entertain a petition for prohibition in the absence of a showing of specific great and irreparable injury to the petitioner, provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration. It may be observed that in such a situation the court is recognizing that if it fails to act the administration of justice generally will suffer great and irreparable injury."

*Id.* (original emphasis).

Speaking as only one justice on this Court, it would appear that if the post-verdict action of a trial court is shockingly out of line with the evidence and the law, a writ of prohibition would be appropriate. The reviewing court would then have to determine if the trial court abused its discretion, causing "great harm or irreparable injury," or sufficiently interfered with the "interest of orderly judicial administration."

Will such a procedural posture serve to prevent a grave injustice from taking place? Unfortunately, we are likely to find out sometime down the road.

Hughes and VanMeter, JJ., join.

COUNSEL FOR APPELLANT:

Susan Jackson Balliet
Assistant Public Advocate

Emily Holt Rhorer
Assistant Public advocate

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Francisco Villalobos II
Special Assistant Attorney General

13